10749

MATTHEWS v. PAYNE, DIRECTOR GENERAL

(113 S. E., 381)

1.  MASTER AND SERVANT—SPEED ORDINANCE HELD APPLICABLE TO RAILROAD EMPLOYEES.—In an action for the death of a flagman resulting from one freight train overtaking another, where defendant claimed that the train on which decedent was riding was behind schedule and traveling at a reduced speed, and hence it was his duty to throw out a fuse to protect his train, an ordinance requiring trains to reduce their speed at the place of the accident was admissible as against the objection that it was passed for the protection of public and had no reference to railroad employees.

2.  APPEAL AND ERROR—INSTRUCTION TO DISREGARD LAST TWO LINES OF REQUEST HELD HARMLESS ERROR.—Where the court read appellant's request to the jury and then instructed them to disregard the last two lines, the jury not having the request before them, the error, if any, was harmless.

3.  APPEAL AND ERROR—EXCEPTION STATING THREE QUESTIONS BY REFERENCE TO OTHER PARTS OF RECORD NOT CONSIDERED—An exception containing three questions, and not stating an error except by reference to other parts of the record, will not be considered.

NOTE:    Binding force of statute or Court rule not to reverse for errors not amounting to miscarriage of justice, see note in L. R. A., 1918B, 390.

For duty under Federal and State railway safety appliance acts, see 20 L. R. A. (N. S.), 49.

4.  TRIAL—INSTRUCTIONS ON RAILROAD'S DUTY HELD CORRECT IN VIEW
    OF OTHER INSTRUCTION.—An instruction that the railroad must
    keep the headlight in good order was not objectionable as impos-
    ing an absolute duty where the jury were also instructed that
    railroad was responsible only for negligence.

5.  MASTER AND SERVANT—RAILROAD'S NEGLIGENCE IN CAUSING COL-
    LISION HELD FOR JURY.—Where two trains traveling in the same
    direction collided, the refusal to direct a verdict for the railroad in
    an action for death of a flagman on the first train *held* proper;
    there being evidence that his train left the station less than five
    minutes before the second train, which had a headlight that would
    show for only 150 feet.

6.  APPEAL AND ERROR—AMOUNT OF VERDICT QUESTION FOR TRIAL
    COURT.—In an action for wrongful death, the amount of the ver-
    dict was a question for the trial court.

Before SEASE, J., Florence.  November, 1920.  Af-
firmed.

Action by E. M. Matthews, Administrator of the Estate
of G. W. Killian, deceased, against John Barton Payne,
Director General of Railroads.  Judgment for plaintiff and
defendant appeals.

*Mr. F. L. Willcox,* for appellant, cites:  *Violation of or-
dinance negligence per se*:  83 S. C., 354.  *But not necessa-
rily actionable unless the proximate cause of injury*:  90
S. C., 281.  *State laws superseded by Federal Employees
Liability Act*:  233 U. S., 492.  *And suit in State Court
is governed by rule of Federal Courts*:  247 U. S., 367.
*No recovery by servant where injury results from violation
of rules of Master*:  96 S. C., 228; 82 S. C., 542; 85 S.
C., 471.  *Recovery limited to compensation*:  2 Roberts
Fed. Note of Carriers, 1073; 98 S. C., 43; 241 U. S., 494;
247 U. S., 367.

*Messrs. Felix E. Alley* and *Whiting & Baker,* for re-
spondent, cite:  *Employee has right to assume trains will
be run according to town ordinance*:  114 S. C., 86; 5 L. R.
A. (N. S.), 207; 65 S. C., 419.  *Jurors can say when there
is no evidence and refusal to charge is not prejudicial*:  101
S. C., 109; 105 S. C., 473.  *Modification of request not*

*prejudicial:* 111 S. C., 280; 103 S. C., 117; 104 S. E., 1086; 60 L. Ed., 1123; 30 L. Ed., 257; 21 L. Ed., 749. *Similar verdicts affirmed:* 96 S. C., 267; 109 S. C., 471; 104 S. E., 1086; 59 L. Ed., 1160; 58 L. Ed., 860; 60 L. Ed., 979; 98 S. C., 48.

November 4, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for death by the wrongful act. Two freight trains were sent out from Florence, passing over the same track from Florence to Sumter. They were interstate trains, and the case is governed by the Federal law. The first train to leave Florence is designated as No. 209 and the second as No. 219. At Timmonsville train No. 219 overtook No. 209 and killed the flagman, G. W. Killian, who was riding in the caboose of No. 209.

The presiding Judge adopted the defendant's statement of the specifications of negligence, as follows:

"One of defendant's requests analyzes that paragraph, and I charge you that it alleges five specifications of negligence:

"First. In starting another train after the train on which plaintiff's intestate was employed before the time fixed by the schedule for another train to leave, as fixed by the rules and regulations.

"Second. Operating a train with a locomotive not equipped with suitable and sufficient lever devices for stopping in emergency.

"Third. Operating a train not properly equipped with a headlight.

"Fourth. Running a train over an interlocking plant without any signal indicating that the track was clear beyond the crossing of another railroad.

"Fifth. Violating the ordinance of the Town of Timmonsville and the State law in operating into Timmonsville a train at a reckless and dangerous rate of speed."

The judgment was for the plaintiff and the defendant appealed.

I.  The first exception is that his Honor erred in allowing the plaintiff to introduce a speed ordinance of Timmonsville, on the ground that the speed ordinance was passed for the protection of the town and its citizens, and had no reference to the duties of the railroad company and its employees.

The rules of the defendant company forbade No. 219 to leave Florence within 10 minutes of the time No. 209 left.  For the safety of the employees, 10 minutes must elapse before one train can follow another.  There is uncertainty as to the time these two trains left Florence. One witness states that No. 209 left Florence at 3:40 o'clock, or some minutes later.  Another witness states that No. 219 left 3:45 o'clock.  Of course, those in charge of No. 209 could not know when No. 219 left Florence. The appellant claims that it was the duty of Killian to throw out a fuse to protect his train, and, not having done so, he was the author of his own wrong.  The rule requires the flagman to throw out the fuse when his train is behind schedule.  There is nothing in this case to show that No. 209 was off schedule.  It is true that in running up grade before reaching Timmonsville the speed was reduced, and at Timmonsville there was a further reduction of speed. There was nothing to show that that was not a condition that applied to every freight train, and a fact known to all who operated the trains at that place.  The ordinance of Timmonsville required No. 209 to reduce speed, so No. 209 should reduce speed and the deceased had a right to rely upon the fact that he would be allowed to obey the law without risk to himself, and that the train following it would make allowances for it.  The exceptions that raise this question are overruled.

II.    His Honor read the appellant's fifth request and said: "I charge you that with the exception of the last two lines." If this was error, it certainly was harmless. The jury did not have the request before them, and could not possibly know what was excepted. The appellant got the benefit of the whole request.

III.    The fourth exception reads:

"In modifying defendant's eighth request to charge by striking therefrom the following language: 'I charge you that there has been no testimony introduced tending to prove specifications B, C, or D'—it being respectfully submitted that there was not a scintilla of evidence to support specification B; that, in view of the regulations of the Interstate Commerce Commission in effect at the time, there was not a scintilla of evidence to support specification C; and the entire record showing that there was not a scintilla of evidence tending to support specification D, and defendant being, in view of the absence of any testimony to this effect, entitled to the benefit of the request."

This Court is very unwilling to pass over exceptions without considering them, but this exception contains three questions, if it states one. It does not state any error, but only refers to other parts of the record for the questions.

IV.    The next assignment of error is that his Honor refused to charge the jury that there was no evidence that No. 219 left Florence within ten minutes of No. 209. We have seen that there was evidence that not more than five minutes elapsed.

We have already considered the matter of the town ordinance of Timmonsville, and the sixth exception needs no further comment.

V.    The next error alleged is that his Honor erred in charging the jury, "I also charge you that he must keep the headlight in good order." The appellant claims that this made it an absolute duty, and not merely a

requirement to use due care. The charge did not have that effect, inasmuch as his Honor charged clearly that the appellant was responsible only for negligence.

VI. The next allegation of error is in refusing to direct a verdict for the defendant. His Honor could not have directed a verdict in view of the fact that there was evidence from which the jury might have inferred that No. 219 left less than five minutes after No. 209; that it had a headlight that showed only 150 feet in front of the engine, whereas a good oil light would show 300 feet; that there was no evidence that No. 209 was behind its schedule, so as to require protection or the putting out of the fuse.

VII. The last exception complains of the amount of the verdict. That is a question for the trial Court.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY and JUSTICES WATTS and COTHRAN concur.